[No. 3307.   Aug. 3, 1929.]

STATE v. NIETO.

[280 Pac. 248.]

Tom W. Neal, of Las Vegas, and Caswell S. Neal, of Carlsbad, for appellant.

Robert C. Dow, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

## OPINION OF THE COURT

WATSON, J.   Appellant was convicted upon an information charging that he handled a deadly weapon—a pistol—in a threatening manner at and toward one Gonzales, and that said act was not in lawful defense of himself, his family, or property, or under legal authority.   Code 1915, § 1703.

The evidence on the part of the state shows that appellant was Republican challenger at an election, and that Gonzales was a peace officer on duty at the polls; that appellant himself was a deputy sheriff and was armed with a pistol; that appellant was more or less intoxicated; that he challenged a Democratic voter, which brought on an altercation, for his part in which Gonzales arrested him; that appellant resisted arrest, and in doing so handled a pistol in a threatening manner.

Appellant did not testify or produce any witnesses.   The defense consisted of an admission by the state that two absent witnesses, if present, would testify that appellant did not handle or draw his pistol, but that one of them took the pistol from his pocket, and the other saw it done; the introduction of appellant's commission as deputy sheriff; and an offer of a "certified copy of the conviction of Luciano Gonzales, in cause No. 5350, in which Luciano Gonzales was found guilty of voluntary manslaughter and sentenced to a term of not less than four years nor more than six years in the penitentiary."

This offer was denied upon the state's objection that the only theory upon which it could be admissible was for impeachment of Gonzales, and that, as he had not been used as a witness, it should not be received at all.   In making the offer, counsel stated that it was

"For the purpose of having some weight and tending to show who the probable aggressor was at the time of the difficulty here, and for the purpose of showing that the defendant knew of this conviction at the time of the difficulty in this case, and that he had a right to act upon that knowledge, or knowledge of that specific act in this case."

■ Error is assigned upon the exclusion of the proffered record of conviction. It is contended that, under State v. Ardoin, 28 N. M. 641, 216 P. 1048, 1050, it was competent as a specific act of violence, bearing upon the question of self-defense. In the Ardoin Case we said:

"It strikes us that the true guide should be a reasonable discretion, and whenever the specific act, by reason of its character, or its relationship in time, place, or circumstance to the other facts in the case, would legitimately and reasonably either affect the defendant's apprehensions or throw light on the question of aggression, or upon the conduct or motives of the parties at the time of the affray, it should be admitted."

We do not think that the bare fact of a conviction of manslaughter is sufficient to warrant us in disturbing the discretion of the trial court.

■ The following instruction was tendered and refused:

"You are instructed that if you find from the evidence the defendant was Republican challenger at the polls on election day, and that he challenged the vote of some person whom he believed to be an illegal voter, and that this enraged the prosecuting witness, and he assaulted defendant or attempted to arrest him because he had challenged a Democratic voter, then the defendant had the right to use such force as was reasonably necessary to resist such assault or prevent such arrest, and if he drew his gun under such circumstances to protect himself from such assault or attempted arrest, if any, you will acquit him."

Citing State v. Martinez, 30 N. M. 178, 230 P. 379, it is contended that this constituted a refusal to submit to the jury appellant's theory of defense, which there was some evidence to support. Appellant did not affirmatively advance or rely upon self-defense. He did not testify himself, and the evidence for which he vouched, that of the absent witnesses, was entirely inconsistent with the theory of self-defense. The only ground on which he could demand such an instruction is that, as an accused person, he was not bound by his denial of the act, but was entitled to the benefit of any theory of defense which there was evidence to support. His counsel, by cross-examination, sought to color the transaction as an assault and attempted arrest, induced by the resentment of a Democratic police officer at the challenge by a Republican of a Democratic voter. He urges that in the facts and cir-

cumstances adduced by the state there is a basis for such a view.

The court submitted both the theory that appellant "was unlawfully assaulted by one Luciano Gonzales, in such a manner as to raise in the mind of the defendant (appellant) a reasonable apprehension of bodily injury to himself," and the theory "that the defendant was in the act of disturbing the public peace, and that Luciano Gonzales was then and there a police officer," having a right to use reasonable force in arresting appellant. The substantial difference between the instruction refused and those given lies principally, if not entirely, in the suggestion, which the former carries, that in attempting to arrest appellant Gonzales was influenced by a personal resentment, rather than by an honest desire to preserve the peace. But, if the officer was lawfully attempting to make an arrest, it would not seem to be material that he had an ulterior motive. So the court has, it seems to us, properly confined the issue to the lawfulness of the arrest, and declined to make an issue of the officer's personal motive.

The court overruled a motion to quash the information, grounded upon the fact that the district attorney verified it on information and belief. Such a verification, it is contended, is insufficient under chapter 145, § 2, Laws of 1925, which reads as follows:

"The district attorney shall subscribe his name to information filed in the county, probate or district court and endorse thereon, the names of the witnesses known to him at the time of filing same. He shall also endorse thereon the names of such other witnesses as may afterwards become known to him, at such time as the court may by rule prescribe. All information shall be verified by the oath of the prosecuting attorney, complainant or some other person."

We derived this section, with the act in which it appears, from Oklahoma. State v. Taylor, 33 N. M. 35, 261 P. 808; State v. Trujillo, 33 N. M. 370, 266 P. 922. Appellant cites Oklahoma decisions holding that a verification on information and belief is violative of the constitutional provision for the security of the person. Const. Okl. art. 2, § 30; Const. N. M. art. 2, § 10. He fails to note, however, that these decisions apply only to mis-

demeanors. State v. Trujillo, supra. Because, in that jurisdiction, only misdemeanors could be prosecuted by information when the statute was adopted, and because the information serves, in misdemeanor cases, the double purpose of an accusation, preceding and supporting arrest, and of a pleading, they reach the peculiar result that, while a misdemeanor information must be positively verified, a felony information need not be verified at all. Henson v. State, 5 Okl.. Cr. 201, 114 P. 630; Hughes v. State, 7 Okl. Cr. 117, 122 P. 554; Brown v. State, 9 Okl. Cr. 382, 132 P. 359; Files v. State, 16 Okla. Cr. 363, 182 P. 911.

Under statutory provisions similar to ours, and where the information fills the single office of a pleading, it has been held, upon satisfactory reasoning, that verification by the prosecuting officer upon information and belief is sufficient. Washburn v. People, 10 Mich. 372; State v. Montgomery, 8 Kan. 351; State v. Hazledahl, 2 N. D. 521, 52 N. W. 315, 16 L. R. A. 150; Sharp v. State, 61 Neb. 187, 85 N. W. 38. The reasoning of these cases is supported and supplemented in State v. Ransberger, 106 Mo. 135, 17 S. W. 290.

So, whether we should recognize the Oklahoma decisions as controlling, or are free to interpret the statute upon reason and authority, we need not consider. In either case, appellant's contention should be overruled.

■ Appellant moved for continuance on the ground of absence of the two witnesses above named. Both were residents of this state temporarily in Colorado. He had diligently endeavored to procure their attendance, and believed that he could procure it at the next term. So far as has been pointed out, or as we can see, the showing was sufficient under Code 1915, § 4460. The court, however, overruled the motion upon the state's admission that the witnesses would, if present, testify as stated by appellant, and that the facts so stated might be read in evidence. In so overruling the motion the court followed Code 1915, § 4461, which reads as follows:

"If the application for continuance is insufficient it shall be overruled; if held sufficient the cause shall be continued, unless the opposite party will admit that the witness, if present, would testify to the facts therein stated, in which event the cause shall

not be continued, but the party may read as evidence of such witness the facts held by the court to be properly stated."

The contention is that, to avoid the continuance to which appellant had shown himself entitled, no admission less than the truth of the facts which appellant had stated his absent witnesses would swear to would suffice. The language of the statute is too plain to permit of any such construction, and it is applicable in criminal cases. Territory v. Emilio, 14 N. M. 147, 89 P. 239.

But it is urged with great earnestness that, if the statute be so construed, it is violative of the Bill of Rights, which assures to an accused person "compulsory process to compel the attendance of necessary witnesses in his behalf." Const. art. 2, § 14.

Concerning the general question of refusing continuance on such admissions by the state, there has been much discussion and difference of judicial expression. 6 R. C. L. p. 568 et seq.; 16 C. J. p. 472 et seq.; 4 Ency. of Pl. & Pr. pp. 867, 868; note, Ann. Cas. 1913C, 488. Under statutes authorizing or directing the practice, and in the absence of statute, such admissions have frequently been held sufficient. It has probably less frequently been held to the contrary. Of course, the constitutional objection is the same, whether the practice is based upon statute, rule of court, or the general power of courts to regulate the conduct of trials. Thus there is a large body of decisions sustaining the practice, and, directly or indirectly, opposed to the present contention. On the other hand, much of the authority to the contrary is from jurisdictions where the practice is not authorized by statute. It is quite possible that some courts which, untrammeled, have condemned the practice, might have hesitated to deny the right of the Legislature to prescribe it.

Missouri and Arkansas are usually instanced as jurisdictions in which statutes like ours are held unconstitutional. The leading cases are State v. Berkley, 92 Mo. 41, 4 S. W. 24, and Graham v. State, 50 Ark. 161, 6 S. W. 721. But by the weight of authority, and by the better reasoning, such legislative acts are not in themselves unconstitutional. Hoyt v. People, 140 Ill. 588, 30 N. E.

315, 16 L. R. A. 239; Adkins v. Commonwealth, 98 Ky. 539, 33 S. W. 948, 32 L. R. A. 108; State v. Harrison, 149 La. 83, 88 So. 696; State v. Wiltsey, 103 Iowa, 54, 72 N. W. 415. Nor is it necessarily a denial of a constitutional right for the court, in the absence of legislative direction, to refuse a continuance upon condition that the state make the admission made in the case at bar. Lumpkin v. State, 19 Ala. App. 272, 97 So. 171; Miller v. State, 139 Wis. 57, 119 N. W. 850; State v. Uhler, 32 N. D. 483, 156 N. W. 220; State v. Wilcox, 21 S. D. 532, 114 N. W. 687.

How sharp the conflict between the two lines of decision we need not pause to ascertain. The emphasis in argument has been placed by some courts on the constitutional guaranty, and by some on the impolicy of opening wide the door to continuances at the behest of accused persons. The cases differ greatly in their facts, and we may doubt that the courts are really widely divergent in their views as to the law. A very good discussion of the decisions will be found in State v. Uhler, supra. The matter is thus generalized in 16 C. J. 473:

"* * * Reasonably administered, the practice of denying a continuance upon the adverse party admitting that the witness, if present, would testify as claimed, whether authorized by statute, or by judicial precedent, does not amount to a denial of this constitutional right."

We consider that, in jurisdictions where the practice is directed by statute, "reasonably administered" means so administered as not to deny the right to compulsory process. So explained, we approve the statement.

Certainly no statute or rule of practice can stand which has the effect in its application in the particular case to deny the right to compulsory process, or which unreasonably limits that right. Not only must the process issue, but there must be a reasonable opportunity to obtain its benefit. But where the right is not denied, or even demanded, and where, because the witnesses are without the jurisdiction it would be unavailing, is the accused entitled, as a matter of constitutional right, to a continuance for the term, upon his mere opinion, reasonably enter-

tained, that the witnesses will later return within reach of process?

At common law continuance was entirely discretionary with the trial court. Both Constitution and statute have modified that rule. The statute is binding, it seems to us, except in so far as the legislative power has been restricted in the premises. Continuance, as such, was not thought by the Constitution makers to be necessary of regulation. They left that to the Legislature and the courts. It was compulsory process which they accorded to accused persons. The Legislature has not denied the right of compulsory process. It has merely said that, as matter of public policy, the administration of justice in criminal cases is not to be delayed for six months, in the hope that an existing obstacle to the enjoyment of the constitutional right may be removed. The constitutional guaranty has not been overridden by the statute, as applied in this case. It has been nullified by a physical fact beyond the control of the Constitution.

It may, or may not, have been wise to take from the courts their ancient discretion, but we have no doubt that it was within the legislative province to declare the public policy of this state as to continuances. We are bound by that declaration, except as it runs counter to the higher law.

The judgment must be affirmed. It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.

CATRON and SIMMS, JJ., did not participate.